| AOC-105 Doc. Code: CI | | Case No. 16-CI-2239 |
|---|---|---|
| Rev. 1-07 Page 1 of 1 Commonwealth of Kentucky Court of Justice www.courts.ky.gov CR 4.02; CR Official Form 1 | CIVIL SUMMONS | Court ☑ Circuit ☐ District County Fayette |

**PLAINTIFF**

ADAM BOGART

VS.

BOARD OF TRUSTEES OF THE UNIVERSITY OF KENTUCKY

**DEFENDANT**

Received
JUN 21 2016
Office of Legal Counsel

**Service of Process Agent for Defendant:**

Bill Thro
University of Kentucky, Office of Legal Counsel
301 Main Building
Lexington                                                      Kentucky    40506    0032

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):

You are hereby notified a legal action has been filed against you in this Court demanding relief as shown on the document delivered to you with this Summons. Unless a written defense is made by you or by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: JUN 17 2016                                         _____ Clerk
                                                     By: _____ D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:
Legal Counsel
this 21 day of June, 2016.

Served by: _____
Title: _____

COMMONWEALTH OF KENTUCKY
FAYETTE COUNTY CIRCUIT COURT
CIVIL ACTION NO.: 16-CI-2239
Div 3

**ADAM BOGART**             **PLAINTIFF**

VS.

**BOARD OF TRUSTEES
OF THE UNIVERSITY OF KENTUCKY**     **DEFENDANT**



FILED
ATTEST: VINCENT RIGGS, CLERK
JUN 17 2016
FAYETTE CIRCUIT CLERK
BY _____ DEPUTY

## COMPLAINT AND JURY DEMAND

### I. NATURE OF THE CASE

1. Plaintiff, Adam Bogart (hereinafter "Bogart"), brings this action against Defendant, the Board of Trustees of the University of Kentucky ("Defendant") alleging that Defendant violated Kentucky Revised Statute 61.101 *et. seq.*, the Kentucky Civil Rights Act ("KCRA") and the Americans with Disabilities Act.

### II. PARTIES

2. Bogart resided within Fayette County at all times relevant to this action.

3. Defendant is a university located in Lexington, Kentucky, that is maintained as a state institution of the Commonwealth of Kentucky.

### III. JURISDICTION

4. Bogart seeks an amount of damages in excess of $6,000.00. Thus, the Circuit Court has jurisdiction.

5. Defendant is an "employer" as that term is defined under KRS § 61.101(2), 42 U.S.C. § 12111(5)(A) and KRS 344.030(2).

6. Bogart is an "employee" as that term is defined under KRS § 61.101(1), 42 U.S.C. § 12111(4) and KRS 344.030(5).

7. Bogart has a "disability" as that term is defined by 42 U.S.C. § 12102(2) and KRS 344.010(4). Bogart suffers from Tourette's Syndrome that is complicated by dystonia and mild cognitive impairment that is triggered by stress.

8. Bogart is a "qualified individual with a disability" as defined by 42 U.S.C. §12111(8) and KRS 344.040(1).

9. Bogart exhausted his administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission. Bogart received the Notice of Right to Sue on March 19, 2016 and files this complaint within ninety (90) days of his receipt.

### IV. FACTUAL ALLEGATIONS

10. Dr. Ai-Ling Lin first sought out Bogart to be a Research Assistant in December 2013, while she was employed by the University of Texas. Dr. Lin indicated that she was particularly impressed by Bogart's knowledge of statistics, his ability to perform and analyze behavioral tests in animals, and his previous work with MRI and neurodegeneration models in mice.

11. In early 2014, Dr. Lin contacted Bogart to inform him that she had accepted a faculty position at the University of Kentucky. Dr. Lin and Bogart corresponded regarding the potential for him to be hired as a research assistant for her at UK.

12. Dr. Lin had received a federal grant from the National Institute of Aging/ National Institute of Health to perform Magnetic Resonance Imaging studies in small

2

animals and humans coupled with other measures of cerebral function to examine the basic pathophysiological underpinnings of the neurodegenerative disorders. As part of this research, Dr. Lin commissioned a study by Metabolon, Inc. ("Metabolon") on the effect of caloric deprivation on metabolic markers in the mouse brain. Dr. Lin paid more than $20,000 from her federal grant for this study.

13. Dr. Lin hired Bogart as a Senior Research Assistant effective June 16, 2014. Bogart's main project was to analyze all of the Metabolon data statistically, and then determine the biochemical and physiological pathways involved in "caloric restriction."

14. Bogart recognized several flaws in the data provided by Metabolon. Bogart raised concerns with Dr. Lin about the quality of the Metabolon report, the imputation of missing values, and the large number of outliers.

15. Dr. Lin became increasingly agitated with Bogart as he raised integrity issues with the Metabolon data and attempted to determine how to handle the outliers in the data. Dr. Lin would often yell at Bogart and speak to him in a disrespectful tone.

16. Despite being aware of the flawed data, Dr. Lin directed Bogart to utilize it anyway. Dr. Lin was so impatient to publish her paper that she was willing to incorporate inadequately analyzed and potentially fraudulent data. Bogart believed that such publication would be research misconduct.

17. Since Dr. Lin planned to make Bogart first author on the research paper, he feared that if anyone eventually found out that the statistics the relevant metabolic pathways were based on were fraudulent, he would be subject to criminal liability.

18. In or about mid-July 2014, Dr. Lin met with Bogart regarding his concerns. Dr. Lin asked Bogart what was the matter and he responded that he felt that if the research paper was published and it was incorrect, he felt that he could be in a great deal of trouble for having been associated with it.

19. On or about August 18, 2014, Bogart saw a neurologist for an evaluation related to his disability. When he returned to the office, he was told to see Dr. Lin. Dr. Lin asked Bogart where he had been and Bogart told her that he had seen a neurologist. Dr. Lin asked for his diagnosis. Bogart initially noted that he was not obligated to tell her. Thereafter, Bogart disclosed to Dr. Lin that he suffered from Tourette's Syndrome. Dr. Lin remarked, "you never told me that you had a lesion on your brain." Dr. Lin became angry at Bogart and questioned why he did not notify her of his condition during the interview process.

20. Bogart pointed out to Dr. Lin that, due to his disability, he needed relaxed and quiet conditions to perform his work. While Dr. Lin appeared to understand, she almost immediately began yelling and harassing Bogart on a daily basis about trivial matters.

21. On or about, Tuesday, August 26, 2014, Dr. Lin issued Bogart an Oral Warning requesting that he make certain improvements in his performance.

22. However, after the Labor Day weekend, Defendant terminated Bogart's employment despite not having given him the opportunity to make the alleged improvements required in the August 26, 2014 Oral Warning.

23. A similarly situated non-disabled research assistant was treated more favorably than Bogart.

24. On or about September 4, 2014, Defendant terminated Bogart's employment.

## V. LEGAL ALLEGATIONS

### COUNT I: VIOLATION OF KENTUCKY'S WHISTLEBLOWER STATUTE

25. Bogart hereby incorporates paragraphs one (1) through twenty-four (24) of his Complaint.

26. Defendants aforementioned actions constitute a violation of KRS 61.101 et. seq.

27. Bogart has suffered damages as a result of Defendant's unlawful actions.

### COUNT II: VIOLATION OF KENTUCKY CIVIL RIGHTS ACT

28. Bogart hereby incorporates paragraphs one (1) through twenty-seven (27) of his Complaint.

29. Defendant violated Bogart's rights as protected by the Kentucky Civil Rights Act by discriminating against him because of his disability.

30. Defendant's actions were intentional, willful and in reckless disregard of Bogart's rights as protected by the KCRA.

31. Bogart has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### COUNT III-DISABILITY DISCRIMINATION - ADA

5

32. Bogart hereby incorporates paragraphs one (1) through thirty-one (31) of his Complaint.

33. Defendant violated Bogart's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. by discriminating against him because of his disability.

34. Defendant's actions were intentional, willful and in reckless disregard of Bogart's rights as protected by the ADA.

35. Bogart has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### COUNT IV: WRONGFUL TERMINATION

36. Bogart hereby incorporates paragraphs one (1) through thirty-five (35) of his Complaint.

37. Defendant terminated Bogart's employment because he refused to engage violate the law in the course of his employment.

38. Bogart has suffered damages as a result of Defendant's unlawful actions.

### VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Adam Bogart, by counsel, respectfully requests the following:

A. A trial by jury;

B. Enter a declaratory judgment holding that Defendant's actions violated Bogart's rights as protected by the provisions of KRS 61.101, KCRA, ADA and/or Kentucky common law.

C. Reinstate Plaintiff to the position, salary and seniority level he would have enjoyed but for Defendant's unlawful employment actions, or award him front pay in lieu thereof;

D. All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

E. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

F. Compensatory damages;

G. Punitive damages;

H. All costs and attorney's fees incurred as a result of bringing this action;

I. Pre- and post-judgment interest on all sums recoverable; and

J. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: _____
Andrew Dutkanych III
Kentucky Attorney No. 91190
101 North Seventh Street
Louisville, KY 40202
Telephone: (502) 561-3418

7

Facsimile: (812) 424-1005
Email: ad@bdlegal.com